LAND, J.
The subject-matter of this litigation was considered and passed upon by this court in the case of State ex rel. Wilder et al. v. Board of Liquidation, 51 La. Ann. 1849 et seq., 26 South. 679, which was a mandamus suit to compel the defendants to sell a sufficient number of constitutional bonds of the city of New Orleans to pay certain certificates issued by the city council for unpaid salaries of public school teachers and portresses for the years 1882, 1883, and 1884, pursuant to articles 315, 316, and 317 of the Constitution of 1898.
The present suit is a mandamus proceeding to compel the sale of like bonds to pay like certificates for unpaid salaries of school *250 teachers and portresses for the years 1885, 1886, and 1887.
In the former suit the mandamus was made peremptory, and subsequently bonds were issued and sold to pay the certificates for said years 18S2, 1883, and 1884.
In 1903 the certificates now sued on were issued by the city council of the city of New Orleans. The claims which they represent were duly presented to the council in the year 1898, as required by article 315 of the Constitution of that year, but were rejected without prejudice. The merit and validity of these claims and certificates are admitted, and the only question in the ease is one of law as to the mode of payment.
Article 316 of the Constitution of 1898 provided that “all such certificates shall be paid by the board of liquidation”; and article 317 of the same instrument provided as follows:
“The funds requisite to pay said _ claims shall be provided by said board of liquidation, by the sale of a sufficient number of the constitutional bonds of the city of New Orleans of the issue provided for by Act No. 110 of the General Assembly for the year 1890, and by the amendment of the Constitution of the state submitted to the people by said act and adopted at the general election in 1892.”
Article 318 authorized the Legislature to amend Act No. 110, p. 144, of 1890, “so far only as to provide that in the further issue of bonds under said act within the limit of ten million dollars provided for in said act the city of New Orleans, through the board of liquidation, shall have authority to issue registered bonds,” etc.
It is plain on the face of the articles of the Constitution of 1898 that the school certificates referred to were to be paid by the sale of bonds of the issue, not exceeding $10,000,-000, provided by Act No. 110, p. 144, of 1890.
When the former mandamus suit was filed in 1899, a large amount of bonds of this issue were on hand, and there was no impediment to their sale to pay the certificates sued on in that case, except the vested contract rights of creditors which the court endeavored to protect by its decree.
But in the case at bar the board of liquidation pleads that it has already issued the full amount of bonds authorized by Act No. 110, p. 144, of 1890. This fact is not disputed.
However, counsel for relators contend that articles 315, 316, and 317 of the Constitution of 1898 do not mean that the certificates in question are payable out of the sale of the $10,000,000 of bonds authorized by the funding act of 1890, but out of the sale of bonds drawn against the surplus of the 1 per cent, tax levied by the statute. It is argued that this contention is supported by the decision of this court in State ex rel. Wilder, supra.
In that case the relators sought to compel the board of liquidation to sell bonds of the issue provided for by Act No. 110, p. 144, of 1890 (constitutional amendment of 1892), for the purpose of paying their certificates, and the district court so decreed. This judgment was affirmed on appeal, with two amendments; one rejecting relator’s claim for interest, and the other recognizing the right of the drainage commission to intervene.
The court, while recognizing the power of the convention to order the sale of consolidated bonds for the purpose of paying school certificates, expressed the opinion that such bonds so sold would be subordinate to the vested rights of creditors of the city and of the drainage commission under the funding act of 1890, because such rights could not be impaired without violating the Constitution of the United States. The Constitution of 1898 did not authorize the issue of additional consolidated bonds, but only the sale of bonds already authorized to be issued. The Constitution of 1898 placed tie school certificates-on the same footing as other debts fundable under the act of 1890. The bonds authorized to be sold were of the same issue as other consolidated bonds and were entitled to the same privileges. The only disturbing factor- *251 was the vested rights of other creditors, which entitled them to preference in case the fund should prove insufficient to pay all the claimants. This condition has never happened, and is not likely to happen, as the fund is constantly increasing.
Relators have seized upon certain isolated expressions in the opinion of the court, and deduce therefrom the conclusion that the bonds ordered to be sold were not consolidated bonds of the $10,000,000 issue, but were additional bonds drawn against any surplus remaining after the payment of all bonds authorized under the act of 1890, and all bonds issued by the drainage commission prior to the adoption of the Constitution of 1898. As has already been stated, the decree in the case ordered the sale of consolidated bonds of the issue authorized by the funding act of 1890. The Court, inter alia, said:
“The convention, while ordering the payment of the certificates held by the relators through sales of consolidated bonds, could not confer upon the holders of such bonds rights which in any way could come in competition with the contract rights of creditors existing against the tax at the time of the adoption of the Constitution.” (Italics ours.)
The court then proceeded to consider the possible result of such a. conflict, and said:
“The consolidated bonds which relators seek to have issued upon their prayer will be drawn against (when issued) any surplus that will remain of the 1 per cent, tax after the payment of all bonds issued and to be issued by the board of liquidation, under Act No. 110, p. 144, of 1890, and the constitutional amendment of 1892, in order to fund and retire and pay the bonds and debts therein .specially enumerated, and also the bond's issued and to be issued by the drainage commission under the provisions and authority of Act No. 114, p. 162, of 1896, to pay the contracts existing at the date of the adoption of the Constitution.”
There is a possible implication that may be drawn from the language above quoted that the issue and sale of consolidated bonds to pay school certificates was additional to the issue provided by the act of 1890. But this question was not before the court, and what was said arguendo is not authoritative. The board of liquidation had no authority under the funding act of 1890 (constitutional amendment of 1892) to issue more than $10,000,000 of bonds. Article 314 of the Constitution of 1898 “recognized” said act and amendment “as of full force and effect,” and article 317 directed that the funds requisite to pay the school certificate should be provided by the board of liquidation by the sale of a sufficient number of constitutional bonds of the city of New Orleans of the issue provided “by said act of 1890 and constitutional amendment of 1892.” There is absolutely no provision in the Constitution of 1898 which empowered the city or board to issue additional bonds against any part of the proceeds of the 1 per cent. tax. The provisions of article 317 were ample to secure the payment of all the school certificates to be thereafter issued by the city council. But unfortunately for relators their claims were rejected by the council in 1898, and when they were approved in 1903 the constitutional fund provided to meet such contingent claims had been exhausted by the issue and sale of the full amount of bonds authorized by law.
That the framers of the Constitution of 1898 intended that such certificates should be paid by the sale of bonds of a certain issue, and in no other manner, is demonstrated by the fact that all the surplus of the 1 per cent, tax over and above what was necessary to provide for the bonds was expressly dedicated, one half to the public schools, and the other half to the drainage commission. Articles 254, 313, and 314.
This court is absolutely without power and authority to order the city and board of liquidation to Issue and sell additional bonds to pay relator’s claim. The city has assumed the payment of these claims, and should make provision for their payment. If that be impossible, the remedy is legislative, and not judicial.
*252 It is therefore ordered that the judgment appealed from be reversed, and that relator’s suit be dismissed, with costs in'both courts.